# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DESHAWN SMITH, | ) | |
| Plaintiff, | ) | |
| VS. | ) | No. 17-2025-JDT-cgc |
| ASHLEY HURDLE, ET AL., | ) | |
| Defendants. | ) | |

## ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

On January 12, 2017, Plaintiff Michael Deshawn Smith, who is incarcerated at the Morgan County Correctional Complex in Wartburg, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint concerns events that allegedly occurred while Smith was incarcerated at the West Tennessee State Penitentiary (WTSP) in Henning, Tennessee. (ECF No. 1 at PageID 2.) After Smith submitted the required financial documents, the Court issued an order granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) Smith also twice moved to serve summons and his complaint on the Defendants. (ECF Nos. 8 & 9.) The Court denied those motions. (ECF No. 11.) The Clerk shall record the Defendants as Nurse Ashley Hurdle, Sergeant Nathan Coleman, and Mental Health Administrator Nicova Tyus.

Smith alleges that on February 9, 2016, he was taken for a medical examination and first seen by Nurse Hurdle. (ECF No. 1 at PageID 3.) Smith asked Hurdle if he could speak with someone from the mental health unit because he sought medication for suicidal thoughts he had been having. (*Id.*) Hurdle told Smith she would have him moved to seclusion, but Smith "told her that I was OK, I'll just wait to see Mental Health when I get shipped." (*Id.*)[1] As Smith was leaving after seeing the doctor, he was called back to speak with a mental health nurse, who asked Smith if he was feeling suicidal or having suicidal thoughts at that moment. (*Id.*) Smith replied that he was not, nor was he having any thoughts of harming himself. (*Id.* at PageID 3-4.) Smith explained the conversation he had with Hurdle and her comment that he should be sent to seclusion. (*Id.* at PageID 3.) The mental health nurse concluded that seclusion was not warranted and gave Smith a pass to speak with the mental health unit again the next morning. (*Id.* at PageID 4.)

As Smith left the medical unit, Nurse Hurdle allegedly commented to him, "You would not need any medication if all ya'll half breeds were not fucked up in the head." (*Id.*) Smith alleges Hurdle further told him that he "'should have been placed in seclusion and that she was going to call Mrs. Tyus,' who is the Mental Health Administrator." (*Id.*) Smith alleges that two hours later, two corrections officers came to his cell and told him to pack his property because he was "going to Medical for a few days." (*Id.*) When Smith asked whose decision it was to place him in seclusion he was told that "Nashille [sic] had

---

[1] Smith states the WTSP was in the process of shipping all inmates to different institutions because Site 1 of the facility was being converted to a prison for women. (*Id.*)

2

me placed in there." (*Id.* at PageID 5.) Smith was placed in seclusion and told to remove his clothing. (*Id.* at PageID 4.) When he refused, seven to eight corrections officers allegedly stripped Smith of his clothes, which he alleges made him feel like he "was being sexually assaulted and was a traumatic experience." (*Id.* at PageID 4-5.)

Smith alleges that Nurse Hurdle is not a mental health nurse and that her actions in sending him to seclusion were meant to discriminate against and harass him. (*Id.* at PageID 5.) He alleges that Hurdle "planned and carried out" her "act of harassment, motivated by her racial bias." (*Id.*)

Smith was released from seclusion on February 11, 2016, after speaking with a nurse practitioner, who allegedly told Smith he "would of never had [Smith] placed in there." (*Id.* at PageID 6.) Smith went to retrieve his property but was told he had none to retrieve. (*Id.*) Among his property were legal documents that Smith alleges were "essential to a pending appeal." (*Id.* at PageID 7.) Smith alleges that Defendant Coleman destroyed his property in retaliation after he bit Coleman while the corrections officers were removing his clothes before he was put in seclusion. (*Id.* at PageID 6-7.) Smith filed a claim for his property with the Tennessee Division of Claims but has not received a response. (*Id.* at PageID 7.) He alleges he has received disciplinary charges for assault and defiance based on his actions while being sent to seclusion. (*Id.*) He also alleges his security classification increased because of his time in segregation. (*Id.*)

Smith seeks compensatory and punitive damages against each Defendant. (*Id.* at PageID 10.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.

4

*Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Smith filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Smith alleges that Nurse Hurdle's actions denied him proper mental health treatment in violation of the Eighth Amendment.[2] The Eighth Amendment prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v.*

---

[2] Smith also alleges that Nurse Hurdle harassed him and made racial comments towards him. It is well settled that verbal abuse or harassment at the hands of prison officials (or other prisoners) does not constitute a violation of the Eighth Amendment. *See, e.g., Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly unprofessional behavior" is insufficient to constitute cruel and unusual punishment).

*Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that prison officials acted with the requisite intent, that is, that the officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38.

Smith does not meet either component of an Eighth Amendment claim. Smith alleges that he told Hurdle he wanted to see the mental health nurse to request medication to treat his suicidal thoughts. When Nurse Hurdle told Smith he should be sent to seclusion, Smith told Hurdle that he "was OK" and would wait until after his expected transfer to see a mental health care provider. A very short time later, Smith told the WTSP mental health nurse that he was not presently having suicidal thoughts or thoughts of self-harm. In order to state a claim that Hurdle was deliberately indifferent, there must be allegations showing she recklessly disregarded a strong likelihood of Smith harming himself. *See Galloway v. Anuszkiewicz*, 518 F. App'x 330, 335 (6th Cir. 2013). Smith's allegations do not suggest any basis to conclude that Nurse Hurdle could have perceived the possibility that Smith would cause himself serious harm. *See id.* at 336 (concluding that possibility or likelihood

inmate would commit suicide, absent "any objective manifestation of suicidal ideation," provided no basis to conclude that prison officer was deliberately indifferent to "a strong likelihood" that inmate would commit suicide). Smith therefore fails to satisfy the objective component.

Additionally, Smith does not allege that Nurse Hurdle subjectively disregarded a risk to his health or safety. He alleges only that Hurdle told Smith that, because of his suicidal thoughts, he should be sent to segregation. Smith's allegations suggest at most a disagreement about the proper course of treatment. Even though Hurdle's suggested treatment was Smith's placement in seclusion, disagreement about the course of treatment does not present a proper claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Smith therefore fails to satisfy the subjective component. He does not state a claim of deliberate indifferent against Nurse Hurdle.

Smith alleges that Nurse Hurdle told Smith he should go to segregation but does not allege that Hurdle made the decision to send him there. He alleges that he was told "Nashille" had him sent to seclusion. Nonetheless, Smith alleges that Hurdle violated his right to due process under the Fourteenth Amendment because he ultimately was sent to segregation. A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v.*

7

*City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993). A prison restriction does not give rise to a protected liberty interest unless the restriction imposed constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Smith's allegation that he was in "seclusion" for two days does not suggest his segregation constituted an atypical or significant hardship. Confinement to administrative or punitive segregation, even for considerably longer periods of time, the loss of package privileges, fines, and restitution generally do not constitute an atypical and significant hardship in the context of prison life. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). Nor does an increased security classification constitute an atypical and significant hardship. *See Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (citing *Sandin*, 515 U.S. at 484). Smith fails to state a Fourteenth Amendment claim against Nurse Hurdle.

To the extent Smith alleges Nurse Hurdle sent him to segregation as an act of discrimination, he fails to state a claim. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). Smith does not identify his race. Although he alleges Hurdle "made

8

a racial comment" and referred to him as a "half-breed," he does not describe what that term means or allege how Hurdle could have meant it to apply to him. Nor does Smith identify any similarly situated inmates of a different race who were not sent to segregation.

Smith alleges Nurse Hurdle told him that she was going to call Defendant Tyus about sending him to segregation. He does not allege that Hurdle ever actually contacted Tyus or that Tyus was aware of Hurdle's comments. Tyus cannot be held liable under § 1983 for Hurdle's actions under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*,

507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.")

Smith does not allege that Defendant Tyus encouraged, authorized, or approved of Nurse Hurdle's actions. Even if he had, Smith has failed to show that any of Hurdle's actions were unconstitutional. He therefore fails to state a claim against Tyus as a supervisor of Hurdle.

Smith alleges that Defendant Coleman destroyed his property because Smith earlier bit Coleman. Claims for deprivation of property, however, are not actionable under § 1983 if adequate state remedies are available to redress the deprivation. *See, e.g.*, *Parratt v. Taylor*, 451 U.S. 527 (1981), *partially overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985). This is true even if the property is taken intentionally. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "[T]he State of Tennessee does provide an adequate post-deprivation remedy for takings of property." *McMillan v. Fielding,* 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Brooks v. Dutton,* 751 F.2d 197, 199 (6th Cir. 1985)). In fact, Smith alleges he has already filed a claim for the loss of his property with the Tennessee Claims Commission.

Smith also alleges that Defendant Coleman's destruction of Smith's legal papers violated his right to access the courts. Prisoners retain a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)). That right "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). To have standing to pursue a First Amendment claim that he was denied access to the

courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394. In addition, the Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996)). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Smith does not adequately plead a claim that he was denied access to the courts. Although he alleges that Defendant Coleman destroyed "legal documents essential to a pending appeal," he does not describe the appeal or the underlying cause of action. Nor does Smith allege that he was unable to pursue the appeal or otherwise suffered an actual injury without the documents that Coleman allegedly destroyed.

To the extent Smith seeks to plead a First Amendment claim of retaliation against Defendant Coleman, he also fails to state a claim. A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394. "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at

11

391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Smith's claim fails at the first element. Smith alleges Defendant Coleman destroyed his property in retaliation for Smith biting Coleman's hand. Although having been bitten did not justify Coleman's alleged destruction of Smith's property, assaulting a corrections officer is not protected conduct under the First Amendment. *See, e.g.*, *Fugate v. Erdos*, No. 1:19-CV-30, 2019 WL 1117348, at *3, *report and recommendation adopted*, No. 1:19CV30, 2019 WL 1115701 (S.D. Ohio Mar. 11, 2019) (citing *Brown v. Caruso*, No. 2:10-cv-180, 2010 WL 3720184, at *2 (W.D. Mich. Sept. 17, 2010)). Even if Coleman intentionally destroyed Smith's property, his actions do not make out a First Amendment claim of retaliation.

Smith also alleges that his grievances regarding his property have gone unanswered. "There is no inherent constitutional right to an effective prison grievance procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate. *Id.*

For the foregoing reasons, Smith's complaint is subject to dismissal in its entirety for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d

944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

On February 11, 2019, Smith moved to file an amended complaint "to include more facts pertaining to [his] access to the courts claim." (ECF No. 13.) That motion is GRANTED. However, the Court will also allow Smith an opportunity to amend his complaint generally.

In conclusion, the Court DISMISSES Smith's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, Smith is GRANTED leave to file an amended complaint. Any amendment must be filed within twenty-one days after the date of this order.

Smith is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count

and must identify each defendant sued in that count.  If Smith fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE